**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **MARK HOOTEN,** | : | |
| **Plaintiff,** | : | |
| **VS.** | : | **NO. 5:11-CV-115 (CAR)** |
| **JOSEPH FOWLKES, *et al.*,** | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendants,** | : | **Before the U.S. Magistrate Judge** |

## RECOMMENDATION

Before the Court are two motions: a Motion to Dismiss (Doc. 21) filed by Defendants Dr. Joseph Fowlkes, Dr. Monica Hill, Robert Toole, Virginia Cox, Nancy Davis, Connie Kilgore, Todd Tripp, and Melinda Thompson; and, a Motion to Strike (Doc. 40) filed by Plaintiff Mark Hooten. For the reasons stated below, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED**. Additionally, because the affidavit of Defendant Deputy Warden Todd Tripp, which Plaintiff seeks to strike, contains evidence relevant to the Court's analysis of Plaintiff's exhaustion of his claims, Plaintiff's Motion to Strike is hereby **DENIED**.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983, alleging multiple instances where he was denied proper medical care for his pre-existing foot condition. Pl.'s Comp. (Doc. 1). Plaintiff claims that Defendants knew of his pre-existing foot condition and failed properly to examine Plaintiff's foot and failed to provide Plaintiff with proper footwear.

Plaintiff has long suffered from a hip deformity that causes him to be off balance by an estimated thirty-one (31) millimeters.[1] Plaintiff's hip deformity caused his right leg to atrophy

[1] Unless cited otherwise, all facts are presented as alleged in Plaintiff's Complaint (Doc. 1).

and required Plaintiff to walk with a constant limp. Before his incarceration, Plaintiff was receiving prescribed treatment on a regular basis, including "chiropractic adjustment and manipulation" as well as other forms of treatment.

On March 25, 2010, Plaintiff had his probation revoked in Jones County, Georgia, and was sentenced to serve five years in the Georgia Department of Corrections. On September 2, 2010, Plaintiff was transferred from the Jones County Law Enforcement Center to the Jackson Diagnostic Prison. Plaintiff was then transferred to Wilcox State Prison on September 21, 2010, where he remained incarcerated when he filed the instant lawsuit.

When Plaintiff arrived at Jackson Diagnostic Prison, Plaintiff presented the staff nurse and doctor with two (2) letters from his physician, which provided details of Plaintiff's hip condition. The letters also contained recommendations for treatment and discussion of potential consequences of the failure to treat Plaintiff's condition. While at Jackson Diagnostic Prison, Plaintiff was seen by Defendant Dr. Joseph Fowlkes, who advised Plaintiff that Plaintiff could retain his New Balance street shoes and shoe lifts. Defendant Fowlkes also provided Plaintiff with profiles for a bottom bunk, no prolonged standing or walking, and lower range housing. Plaintiff, however, was never allowed to retrieve his New Balance shoes, and Defendant Fowlkes cancelled each appointment that was made with Plaintiff following Plaintiff's initial appointment.

Three weeks after he arrived at Jackson, Plaintiff was transferred to Wilcox State Prison. While at Wilcox State Prison, Plaintiff was seen by Defendant Nurse Virginia Cox on multiple occasions. Plaintiff provided Defendant Cox with his physician letters and complained of severe leg, foot, and back pain that was caused by wearing improper shoes and inadequate shoe inserts. Plaintiff also requested an examination and treatment of his foot sores that were caused by

Plaintiff's prison boots. Defendant Cox did not examine Plaintiff's sores or provide Plaintiff with pain medication, but Defendant Cox did order a half-inch shoe lift for Plaintiff and provided Plaintiff with bandages for his sores. Plaintiff continued to request examinations and pain medication for his sores, which he never received.

After Plaintiff had not received the shoe insert by October 11, 2010, Plaintiff requested information as to when he would be receiving the shoe inserts. Defendant Nurse Practitioner Connie Kilgore responded in writing to Plaintiff that the shoe insert was on order. Plaintiff made a similar request to Defendant Warden Robert Toole, who also responded to Plaintiff that the shoe insert was on order.

On October 17, 2010, Plaintiff was provided with a ½ inch shoe insert. The shoe insert did not fit properly inside Plaintiff's boot, and Plaintiff complained to Defendant Cox that the shoe insert was too small and caused more pain to his lower back and legs. Again, Defendants Cox and Kilgore only gave Plaintiff bandages for his sores. On October 22, 2010, Plaintiff was informed that he was being referred to the Augusta Medical Prison for further evaluation. Plaintiff was not given an expected date for his transfer. On November 17, 2010, Plaintiff wrote Defendant Counselor Nancy Davis to inquire about his appointment at the Augusta Medical Prison. Defendant Davis responded to Plaintiff that she did not know when Plaintiff would be transferred to the Augusta Medical Prison.

On December 20, 2010, Defendant was transferred to the Augusta Medical Prison. Plaintiff was not seen by a doctor, but Plaintiff was seen by a prosthetic examiner, who fit Plaintiff for new shoe lifts. Plaintiff was told that he would receive two (2) padded shoe inserts and one (1) full length shoe insert. Plaintiff was informed by the prosthetic examiner that Defendant Monica Hill had not put in a request for Plaintiff to see a doctor, but only for a shoe

lift. On January 19, 2011, Plaintiff received a shoe insert that was prepared by the Augusta Medical Prison, but the shoe insert was "only a duplicate" of the insert Plaintiff had previously received. Pl.'s Comp. (Doc. 1).

After complaining of pain in his back, legs, and feet to Defendants Cox and Kilgore to no avail, Plaintiff was seen by Defendant Dr. Nick Taylor on February 8, 2011. Plaintiff was told by Defendant Taylor that he would be given permission to receive shoes and his shoe lift from home. Plaintiff then requested the necessary forms to obtain his shoes and shoe lift from home in a letter to Defendant Davis. Plaintiff did not receive a response from Defendant Davis.

On March 30, 2011, Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his medical needs by: (1) failing to provide or fit Plaintiff for a shoe insert while at the Jackson Diagnostic Prison and Wilcox State Prison in September through October 2010; (2) failing to provide Plaintiff with shoes and a proper shoe lift as prescribed by Defendant Taylor in February 2011; and, (3) failing to provide Plaintiff with adequate medical care for Plaintiff's condition based on the refusal of Defendants to follow the prescribed orders of Plaintiff's outside physician or to treat his pain and injuries.

## DISCUSSION

Defendants' Motion to Dismiss argues the following: (1) that Plaintiff's claims based on the failure to follow the February 2011 medical orders of Defendant Taylor were not exhausted as required by the Prison Litigation Reform Act (PLRA); (2) that Plaintiff failed to state a claim against Defendants Toole, Davis, Tripp, and Thompson; and, (3) that Defendants are entitled to Eleventh Amendment immunity from the claims brought against them in their official capacities.

1. Failure to Exhaust

Plaintiff's claims based on Defendants' failure to follow the February 2011 medical orders of Defendant Taylor must be dismissed for failure to exhaust his administrative remedies.[2] The PLRA requires an incarcerated plaintiff to exhaust all available administrative remedies before he can bring any action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). Further, the Eleventh Circuit has made it clear that the exhaustion of available administrative remedies is a precursor to a prisoner's filing a civil rights action, even when the administrative procedures set forth by the prison are futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). Because the record shows that Plaintiff filed the instant lawsuit before appealing the denial of his formal grievance regarding his claims against Defendant Taylor, Plaintiff has failed to exhaust his administrative remedies in regard to those claims.

Where, as here, a motion seeking dismissal based on the affirmative defense of failure to exhaust is filed, a review of the motion involves a two-step process. See Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008). The court must first look to the factual allegations in the motion seeking dismissal as well as those in the plaintiff's response. If they conflict, the court takes the plaintiff's version of the facts as true. Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. If the complaint is not subject to dismissal when the plaintiff's version of the facts is accepted as true, the court must proceed to the second step. The second step requires the court to make specific findings of fact to resolve the disputed factual issues related to exhaustion. Id. At the

[2] Defendants concede that Plaintiff fully exhausted his administrative remedies for his other claims that Defendants: (1) failed to provide or fit Plaintiff for a shoe insert at the Jackson Diagnostic Prison and Wilcox State Prison; and, (2) failed to treat Plaintiff and follow the orders of Plaintiff's outside physician. Def.'s Motion to Dismiss (Doc. 21); Def.'s Reply (Doc. 41).

second stage of the analysis, the defendant has the burden to prove that the plaintiff failed to exhaust his available administrative remedies. Id.

This case can be resolved at the first stage of the Turner analysis. In support of their motion, Defendants submitted the affidavit of Defendant Tripp, the Deputy Warden of Care and Treatment at Wilcox State Prison. In this affidavit, Defendant Tripp provides an overview of the grievance procedure. The affidavit also asserts that Plaintiff filed an informal grievance regarding the medical orders of Defendant Taylor on February 28, 2011. Plaintiff then filed a formal grievance, #79751, on March 22, 2011. Although a response to Plaintiff's formal grievance was issued on April 8, 2011, Plaintiff had already initiated the instant lawsuit.[3] Plaintiff thus did not appeal the denial of his formal grievance to the Commissioner's office prior to the filing of the instant lawsuit.

Although Plaintiff contends in his response to Defendants' motion to dismiss that he exhausted all available administrative remedies, Plaintiff does not assert that he appealed the denial of his formal grievance #79751 prior to filing his lawsuit. Plaintiff merely states that he "was without further possibility of administrative relief." Pl.'s Resp. (Doc. 39). It is clear, however, that Plaintiff was aware of the further administrative relief available to him because he had previously fully exhausted all available administrative remedies with his other claims. Additionally, in the event that Plaintiff is arguing that the administrative procedures at Wilcox State Prison are futile or inadequate, such inadequacy does not excuse a failure to exhaust the administrative process. See Alexander, 159 F.3d at 1326.

Accordingly, it is hereby **RECOMMENDED** that Plaintiff's claims against Defendant Taylor and any claims against any other Defendant stemming from the failure to comply with Defendant Taylor's medical orders be **DISMISSED** without prejudice.

---

[3] Defendant Tripp's affidavit is supported with documentation of Plaintiff's grievances.

2. Failure to state a claim

*a. Defendants Toole and Davis*

Plaintiff has failed to state a claim against Defendant Warden Toole and Defendant Counselor Davis because he has failed to show a sufficient causal connection between their actions and Plaintiff's failure to receive medical treatment. Defendants Toole and Davis cannot be held liable under 42 U.S.C. § 1983 solely on the basis that they were in a supervisory position. Section 1983 does not authorize claims based on *respondeat superior* or vicarious liability. Hyland v. Kolhage, 267 Fed.Appx. 836, 841 (11th Cir. 2008); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Supervisory liability can be established only "when the supervisor personally participates in the alleged constitutional violation or when there is causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotations omitted). Mere knowledge of a potential deprivation is not sufficient to establish a causal connection between the defendant's action and the alleged deprivation of a constitutional right or to impose liability on a supervisor. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The plaintiff must allege purposeful action by the supervisor to deprive plaintiff of a constitutional right in order to state a claim against the supervisor. Id.

A plaintiff may be able to state a claim against a supervisory official absent purposeful participation by showing a causal connection through other means. A plaintiff can do this by demonstrating either that "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or that "a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the

subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has failed to allege a sufficient causal connection between the actions of Defendants Toole and Davis and the harm caused by Plaintiff's inability to receive adequate medical treatment. Plaintiff's claims are based on the actions and decisions of the medical staff at the Jackson Diagnostic Prison and Wilcox State Prison, specifically the failure to provide Plaintiff with proper shoe inserts and the failure to treat Plaintiff's foot. Plaintiff contends that Defendants Toole and Davis participated in the deprivation of his constitutional rights by failing to respond adequately to Plaintiff's complaints and grievances contained in letters written to them by Plaintiff. Merely "filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied." Holmes v. Correction Corp. of America, 2011 WL 3490086 (S.D.Ga. 2011) (quoting Owens v. Leavins, 2006 WL 1313192, at *2 (N.D.Fla. 2006).

The grievances received by Defendants Toole and Davis are not sufficient to establish supervisory liability. Plaintiff admits that Defendant Toole responded to Plaintiff's letter and informed Plaintiff that he would be receiving a shoe insert, which Plaintiff admits to receiving. Plaintiff's allegations against Defendant Davis are solely based in her administrative role in the grievance process. Additionally, Plaintiff does not provide evidence of a history widespread abuse, or a custom or policy implemented by Defendants that caused his injury. Accordingly, it is **RECOMMENDED** that Defendants Toole and Davis be **DISMISSED** from this action.

*b. Defendants Tripp and Thompson*

Plaintiff has failed to state a claim against Defendants Tripp and Thompson because Plaintiff does not allege any facts to suggest that these two Defendants deprived him of his

constitutional rights. A plaintiff does not state a claim by merely making blanket assertions without supporting such assertions with factual allegations. Ashcroft, 129 S.Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not state a claim. Id. Plaintiff's claims against Defendants Tripp and Thompson are merely recitations of the elements of his cause of action. Accordingly, it is hereby **RECOMMENDED** that Defendants Tripp and Thompson be **DISMISSED** from this action.

3. Defendants in their official capacity

Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. Lassiter v. Alabama A & M University, 3 F.3d 1482, 1485 (11th Cir. 1993). Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. Carr v. City of Florence, Ala., 916 F.3d 1521, 1525 (11th Cir. 1990). Thus, if the state has not waived its immunity, the Eleventh Amendment bars a Section 1983 suit against that state. Cross v. State of Ala., 49 F.3d 1490 (11th Cir. 1995). By extension, the Eleventh Amendment also bars Section 1983 suits against state officials in their official capacities, because in such a case, the state is considered the real party in interest since an award of damages would be paid by the state. Id. at 1503.

In this case, all Defendants are protected by Eleventh Amendment immunity. The State of Georgia has specifically preserved its Eleventh Amendment Immunity in the state constitution. Ga. Const. Art. 1, Sect. II, Par. IX(f). As explained above, official capacity

defendants are not persons. Accordingly, any Section 1983 claims against Defendants in their official capacity are not permissible.

In his response, Plaintiff argues that Defendants are subject to suit in their official capacity because he brought his action under the American with Disabilities Act (ADA) as well as Section 1983. Although Defendant correctly asserts that Defendants are not entitled to Eleventh Amendment immunity under the ADA (See United States v. Georgia, 546 U.S. 151, 159 (2006)), Defendant has failed to state a claim under the ADA. To state a claim under the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of services or programs of a public entity or otherwise discriminated against; (3) because of his disability. Shotz v. Cates, 256 F.3d 1077 (11th Cir. 2001). Plaintiff has not shown how he was discriminated against because of his disability, nor does he allege that he has been denied access to any prison programs or benefits as a result of his disability. Accordingly, it is **RECOMMENDED** that Plaintiff's claims against Defendants in their official capacity be **DENIED**.

## CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED**. In summary, it is recommended that all claims against Defendant Dr. Nick Taylor and all claims against Defendants arising from the failure to comply with Defendant Taylor's medical orders be dismissed without prejudice. It is also recommended that all claims against Defendants Robert Toole, Nancy Davis, Todd Tripp, and Melinda Thompson be dismissed with prejudice, and that all claims against Defendants in their official capacity be dismissed with prejudice.

Plaintiff's claims against Defendants Dr. Joseph Fowlkes, Dr. Monica Hill, Virginia Cox, and Connie Kilgore in their individual capacities arising from the failure to provide or fit Plaintiff for a shoe insert in September through October 2010, and his claims alleging the general denial of medical care based on Defendants' refusal to follow the prescribed orders of Plaintiff's outside physician and treat his pain and injuries will be allowed to proceed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

Also before the Court is Plaintiff's Motion to Strike the affidavit of Defendant Todd Tripp. Striking a pleading should be sparingly used by courts as it is a drastic remedy to be resorted to only when required for the purposes of justice. Further, Defendant's affidavit contains evidence that is relevant in the Court's analysis of Plaintiff's exhaustion of his claims. Accordingly, Plaintiff's Motion is hereby **DENIED**.

So **RECOMMENDED** and **ORDERED**, this 6th day of January, 2012.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge