IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARK HOOTEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:11-CV-115 (CAR) |
| | : | |
| JOSEPH FOWLKES, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants, | : | Before the U.S. Magistrate Judge |
| _____ | : | |

## RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Dr. Joseph Fowlkes, Dr. Monica Hill, Nurse Virginia Cox, and Nurse Connie Kilgore. Doc. 62. Plaintiff Mark Hooten has failed to demonstrate a genuine issue of material fact regarding Defendants' alleged deliberate indifference to his serious medical needs, and Defendants have shown that they are entitled to judgment as a matter of law. Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

PROCEDURAL BACKGROUND

On March 27, 2011, Plaintiff Mark Hooten, proceeding *pro se*, filed his Complaint pursuant to 42 U.S.C. § 1983 alleging that various prison officials and medical personnel were deliberately indifferent to his serious medical needs. Compl. (Doc. 1). Plaintiff claims that prison officials failed to provide Plaintiff with proper footwear, failed to treat Plaintiff's foot and back pain, and failed to follow the treatment prescribed by Plaintiff's previous physician. Id. Following an initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff's claims against Defendants Dr. Fowlkes, Dr. Hill, Cox, Kilgore, Robert Toole, Nancy Davis, Todd Tripp, and Melinda Thompson were allowed to proceed. Doc. 11.

1

On August 5, 2011, Defendants filed a motion to dismiss. Doc. 21. On March 15, 2012, the Court granted Defendants' motion to dismiss, finding that: (1) Plaintiff failed to state a claim against Defendants in their official capacities; (2) Plaintiff failed to exhaust his administrative remedies regarding his claims against Defendant Taylor and his claims regarding Defendants' failure to comply with Defendant Taylor's medical orders; and (3) Plaintiff failed to state a claim against Defendants Toole, Davis, Tripp, and Thompson. Doc. 50. Defendants Taylor, Toole, Davis, Tripp, and Thompson were therefore dismissed from the lawsuit. Id. On August 8, 2012, following the close of discovery, remaining Defendants Dr. Fowlkes, Dr. Hill, Cox, and Kilgore filed the instant Motion for Summary Judgment. Doc. 62.

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the facts of the case are as follows: Plaintiff suffers from a hip deformity that causes a thirty-one (31) millimeter difference in height between his left and right leg. Compl. (Doc. 1). As a result, Plaintiff's right leg has atrophied and does not completely touch the ground, causing Plaintiff to walk with a constant limp. Id. Prior to his incarceration, Plaintiff was receiving treatment from a chiropractor. Id.

On September 2, 2010, Plaintiff arrived at Georgia Diagnostic and Classification Prison (GDCP). Id. Upon his arrival, Plaintiff presented GDCP medical staff with two letters written by his chiropractor. Id. The letters describe Plaintiff's hip and leg condition and recommend that Plaintiff be seen by a neurologist due to nerve damage in his spine and neck. Def. Ex. E at 17-18 (Doc. 62-7). The letters also recommend that Plaintiff be seen by an endocrinologist for issues related to adrenal fatigue and low hormone production. Id. At Plaintiff's medical intake screening on September 3, 2010, Dr. Aleta Gardner provided Plaintiff with medical profiles to accommodate his hip and leg condition, including assignment to a low bunk in a low tier

dormitory. Id. at 1-2; Kilgore Aff. (Doc. 62-5). Plaintiff's vital signs appeared normal and no distress was noted. Id. On September 14, 2010, Plaintiff's medical profiles were increased to include no prolonged standing and no standing on uneven surfaces in addition to his low bunk and low tier profiles. Id.

On September 21, 2010, Plaintiff was transferred to Wilcox State Prison (WSP). Compl. Doc. 1). Upon his arrival at WSP, Plaintiff's medical profiles were renewed. Id. At intake, Plaintiff complained that his boots were causing sores on his feet. Id.; Def. Ex. E at 5 (Doc. 62-7). On September 23, 2010, Plaintiff was seen by Defendant Cox. Cox Aff. (Doc. 62-6); Kilgore Aff. (Doc. 62-5); Def. Ex. E at 6 (Doc. 62-7). During the visit, Plaintiff complained of nasal drainage, fatigue, and issues with his stool. Def. Ex. E at 6 (Doc. 62-7). Plaintiff again stated that his boots were rubbing his feet and that he needed a shoe lift. Id. Defendant Cox noted that a shoe lift needed to be reordered for Plaintiff and refilled Plaintiff's medications. Id. Tylenol was also made available to Plaintiff in his dorm. Kilgore Aff. (Doc. 62-5). On September 27, 2010, Plaintiff submitted another sick-call request and was examined by Defendant Cox. Def. Ex. E at 7 (Doc. 62-7). Plaintiff complained of athlete's foot, nasal drainage, and foot sores. Id. Defendant Cox examined Plaintiff's feet and noted that Plaintiff had unopened blisters on his feet. Id. Defendant Cox prescribed Plaintiff medication for his various complaints and further noted that Plaintiff needed a shoe lift. Id.

On October 4, 2010, Plaintiff was seen by medical staff at WSP and complained that the shoe lift ordered for him would be insufficient. Id. at 8. Plaintiff stated that he was allowed to wear his tennis shoes at GDCP and that his shoes were not sent with him to WSP. Id. Plaintiff stated that he believed that the prison boots would continue to cause blisters even with the shoe lift. Id. Nurse Christian examined Plaintiff's feet and noted that Plaintiff's blisters were healing

3

yet remained slightly red. Id.; Kilgore Aff. (Doc. 62-5). Nurse Christian told Plaintiff that he needed to continue to clean his feet to prevent infection and noted that Plaintiff understood. Id. The following day, Defendant Cox reviewed the notes from Plaintiff's examination and determined that Plaintiff should try the boot with the shoe lift before taking further action. Id.; Cox Aff. (Doc. 62-6).

On October 19, 2010, Plaintiff was issued a half-inch shoe wedge. Def. Ex. E at 9 (Doc. 62-7); Kilgore Aff. (Doc. 62-5). On October 21, 2010, Defendant Cox examined Plaintiff after Plaintiff submitted a sick-call request complaining about his shoe wedge. Def. Ex. E at 10 (Doc. 62-7). Plaintiff stated that the shoe wedge was sliding and causing him to be off-balance. Id. Plaintiff also stated that he was still suffering from red areas on his feet and that the boots caused foot pain. Id. Defendant Cox noted that Plaintiff had reddened areas on his feet but no open sores. Id. Defendant Cox instructed Plaintiff to continue using Band-Aids and Tylenol for his feet. Id. Defendant Cox further noted that the wedge was indeed sliding back and forth and that a full-length shoe lift should be ordered for Plaintiff. Id. If WSP could not secure a full-length shoe lift for Plaintiff, Defendant Cox recommended that Plaintiff see an orthotist for further evaluation. Id. Plaintiff's records indicate that Plaintiff understood the suggested treatment plan. Id.

On November 2, 2010, Defendant Dr. Hill ordered that a consultation for Plaintiff be scheduled with Augusta Brace so that Plaintiff could be evaluated and fitted for a different shoe lift. Id. at 12. Because Augusta Brace provides orthotic fittings and evaluation for the Georgia Department of Corrections only periodically, weeks passed before an appointment was able to be secured for Plaintiff. Kilgore Aff. (Doc. 62-5). After submitting two sick-call requests in early December, Plaintiff was examined by Defendant Kilgore on December 13, 2010. Id.; Compl.

(Doc. 1). Plaintiff complained that he had suffered years of foot and back pain, and Defendant Kilgore informed to continue to take Tylenol for his pain. Def. Ex. E (Doc. 62-7). Defendant Kilgore informed Plaintiff that he had a consultation scheduled with Augusta Brace and instructed Plaintiff to report any change in symptoms. Id.

On December 20, 2010, Plaintiff was transported to the Augusta Medical Prison (AMP) for evaluation by Augusta Brace. Id. at 13; Compl. (Doc. 1). Upon his arrival, Plaintiff was examined and fitted for a shoe lift by Allen Williams, a certified orthotist with Augusta Brace. Def. Ex. E at 13 (Doc. 62-7). Williams noted that he would prepare a half-inch "inside heel wedge [with] soft top cover" and ship the shoe lift to Plaintiff at WSP. Id. Plaintiff was then returned to WSP. Id. On December 28, 2010, Plaintiff was seen by Defendant Kilgore. Id. Plaintiff informed Defendant Kilgore that he was told by Augusta Brace that he was going to receive soft shoes and a full-length heel lift. Id. Defendant Kilgore told Plaintiff that the orthotist did not recommend soft shoes and that Plaintiff would receive the new shoe lift when it arrived at WSP. Id. On January 4, 2011, Plaintiff submitted a sick-call complaining of issues, including lower back pain and foot pain. Id. at 15. Defendant Cox examined Plaintiff and noted reddened areas on Plaintiff's heels and the top of his feet. Id. Defendant Cox informed Plaintiff to continue applying Band-Aids to the reddened areas and continue to take Tylenol for his pain. Id.

On January 19, 2011, Plaintiff was issued a new shoe lift prepared by Augusta Brace. Id. at 16; Compl. (Doc. 1). The new wedge was essentially the same as Plaintiff's previous wedge and did not alleviate Plaintiff's problems. Compl. (Doc. 1).

## LEGAL STANDARD

In accordance with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide Plaintiff with adequate footwear, failing to adequately treat Plaintiff's foot and back pain, and failing to follow the prescribed orders of Plaintiff's previous physician. Because Plaintiff has failed to demonstrate genuine issues of material fact regarding his medical treatment at GDCP and WSP, and because the record indicates that Defendants were not deliberately

6

indifferent to Plaintiff's serious medical needs, Defendants are entitled to judgment as a matter of law.

To create genuine issues of material fact, Plaintiff must point to evidence that Defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment prohibits cruel and unusual punishment, including deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Campbell, 169 F.3d at 1363. With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and, (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

It is not enough, then, to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The elements required to prove the subjective component of a deliberate indifference claim establish that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under 42 U.S.C. § 1983. Taylor, 221 F.3d at 1258. A prisoner cannot establish a violation simply because he "may have desired different modes of treatment" that that which was provided to him. Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985). Such course

of treatment claims, by definition, involve the "exercise of professional judgment" and as such are not actionable. Estelle, 429 U.S. at 105.

1. Claims arising at GDCP

Plaintiff has failed to show that Defendant Dr. Fowlkes was deliberately indifferent to Plaintiff's serious medical needs while he was incarcerated at GDCP. Plaintiff alleges that Defendant Dr. Fowlkes informed Plaintiff that he would be allowed to wear his tennis shoes upon his arrival at GDCP. Plaintiff contends that he was forced to wear prison boots, despite Defendant Dr. Fowlkes' informing him that he could wear his tennis shoes. Plaintiff also contends that his medical appointments at GDCP were repeatedly cancelled.

Although courts are required to view the evidence in the non-movant's favor, courts need not accept the non-movant's version of the events when his version is contradicted by his medical records. Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir. 1990); Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987). Additionally, "mere conclusions and unsupported factual allegations are insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

Despite Plaintiff's contentions, Plaintiff's medical records indicate that he was never given a soft shoe profile or seen by Defendant Dr. Fowlkes at GDCP. Defendant Dr. Fowlkes testifies that he does not recall ever treating Plaintiff or informing Plaintiff that he could wear tennis shoes. Plaintiff's medical records support Defendant Dr. Fowlkes' recollection that he did not interact with Plaintiff. Plaintiff's medical records indicate that Plaintiff was examined by Dr. Gardner during his intake at GDCP, not Defendant Dr. Fowlkes. Additionally, Plaintiff has presented no evidence to support his conclusory allegations that his medical appointments were repeatedly cancelled. Plaintiff's medical records show that he was given a medical profile to

accommodate his hip and leg deformity upon his arrival at GDCP, and that his medical profile was renewed and expanded the following week. As such, Plaintiff has failed to show that Defendant Dr. Fowlkes was deliberately indifferent to his serious medical needs.

2. Claims arising at WSP

Plaintiff has also failed to show that Defendant Cox, Kilgore, or Dr. Hill was deliberately indifferent to his serious medical needs while Plaintiff was incarcerated at WSP. Plaintiff has failed to present evidence to show that Defendants were subjectively aware of a serious risk of harm and disregarded that risk.

Plaintiff contends that Defendants failed to provide adequate treatment for his foot and back pain at WSP. Plaintiff states he suffered from excruciating pain and that Defendants only provided him with Band-Aids for his feet. Plaintiff alleges that Defendants refused to even look at the sores on his feet. Although it is undisputed that Defendants only prescribed a regimen of Band-Aids and Tylenol for his sores and pains, Plaintiff's contentions that Defendants refused to examine him are contradicted by his medical records. Plaintiff's medical records describe Plaintiff's examinations and include specific details regarding Plaintiff's sores. Because Plaintiff's blisters and reddened areas were not open wounds, Defendants believed that Band-Aids and Tylenol were sufficient to treat the sores. At most, Defendants failure to provide Plaintiff with more intensive treatment for his blisters and reddened sores amounts to negligence.

Plaintiff's medical records also do not contain any indication that Plaintiff complained of excruciating back and foot pain at WSP. Plaintiff was examined on numerous occasions regarding his foot sores, nasal issues, fatigue, and other medical issues at WSP. Plaintiff's medical records do not indicate, however, that Plaintiff complained of excruciating back and foot pain other than complaints regarding his blisters. As such, there is nothing in the record

indicating that Defendants were aware or should have been aware that Plaintiff's general complaints of back and foot pain required more intensive treatment that the Tylenol provided by Defendants.

It is undisputed that there were complications and delays in the process of obtaining an adequate shoe lift to accommodate Plaintiff's imbalance caused by his hip deformity. Despite the delay in providing Plaintiff with a shoe lift and despite the problems caused by the wedge given to Plaintiff, Plaintiff has failed to show that Defendants' actions rose to deliberate indifference. Upon Plaintiff's arrival at WSP on September 21, 2010, he was given medical profiles to accommodate his condition. Two days later, Plaintiff complained that his boots caused blisters on his feet, and Defendant Cox noted that a shoe lift needed to be reordered for Plaintiff. When Plaintiff complained again about his feet and boots the following week, Defendant Cox informed Plaintiff that a shoe lift had been ordered. On October 4, 2010, Plaintiff informed the medical staff that the shoe lift that had been ordered would not work and that he wanted a soft shoe profile. Defendant Cox determined that Plaintiff should try the shoe lift and that further action would be taken if the shoe lift caused problems.

Plaintiff's shoe wedge arrived at WSP on October 19, 2010. Two days later, Plaintiff complained to Defendant Cox that the shoe wedge did not fit correctly and that it was causing more problems. Defendant Cox recommended that a full length shoe lift be ordered for Plaintiff, or in the alternative, that Plaintiff be scheduled to see a specialist. On November 2, 2010, Defendant Hill ordered that a consultation for Plaintiff be scheduled with Augusta Brace, an orthotics specialist. Augusta Brace could not schedule an appointment for Plaintiff until December 20, 2010, however. After the orthotist examined Plaintiff, the orthotist ordered Plaintiff a new shoe lift. Despite Plaintiff's contention that the orthotist informed Plaintiff that he

would be receiving a prescription for soft shoes, the medical records indicate that the orthotist prepared an order for a shoe wedge similar to the wedge that Plaintiff was already using. As such, Plaintiff's claim that Defendants failed to provide him with his prescribed footwear is without merit.

Although Defendants may have been negligent for failing to follow up with their orders regarding Plaintiff's shoe lift, such negligence does not amount to deliberate indifference. Additionally, Defendants' failure to provide Plaintiff with a soft shoe profile despite Plaintiff's continued requests does not amount to deliberate indifference. See Hamm, 774 F.2d at 1576 (the desire for different modes of treatment does not establish a constitutional violation).

Plaintiff has also failed to show that Defendants were deliberately indifferent by causing undue delay in obtaining a proper shoe lift. To establish a claim of deliberate indifference based on delay in medical care, a prisoner must establish that he suffered increased injury due to the delay. See Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007). In determining whether delay in treatment amounts to deliberate indifference, courts should consider: (1) the seriousness of the medical need, (2) whether the delay worsened the medical condition, and (3) the reason for the delay. Id.

Using these factors, the delay in obtaining a proper shoe lift for Plaintiff does not amount to deliberate indifference. Although Plaintiff's hip deformity may be a serious medical need, the record indicates that Plaintiff's complaints amounted to blisters and reddened areas on his feet. Although Plaintiff continued to suffer foot pain during the delay, the medical records suggest that the blisters and reddened areas were healing despite the delay. There is no evidence in the medical records that the blisters became overbearing or infected.

Moreover, the medical records indicate that the delays were not caused by Defendants. A large part of the delay occurred while Defendants waited for Plaintiff's shoe lift to arrive at WSP. Because shoe lifts are not kept on site at WSP, the shoe lift had to be ordered from an outside provider and could not be immediately supplied to Plaintiff. Another large part of the delay occurred while Plaintiff waited for his appointment with Augusta Brace. Because Augusta Brace only provides orthotic fittings and evaluations for the Department of Corrections periodically, Augusta Brace did not schedule Plaintiff's appointment until weeks after Defendant Dr. Hill ordered Plaintiff's consultation. Accordingly, the record does not support a finding that the delay in obtaining a shoe lift for Plaintiff was caused by Defendants' deliberate indifference.

3. Failing to follow previous physician's orders

Plaintiff contends that Defendants were deliberately indifferent by failing to follow the orders of Plaintiff's previous physician. An inmate can establish that a prison official was deliberately indifferent to his serious medical needs by showing that the official intentionally interfered with prescribed treatment. Marsh v. Butler County, Ala., 268 F.3d 1014, 1061-62 (11th Cir. 2001).

Plaintiff's contention that Defendants were deliberately indifferent by failing to follow his previous physician's orders is without merit. The letters that Plaintiff presented to the medical staff contained only recommendations from his chiropractor and are not prescribed treatment. The recommendations include referring Plaintiff to a neurologist and other specialists for further testing to determine if further treatment is necessary. Additionally, the chiropractor's letters make assessments regarding a number of Plaintiff's medical issues -- including adrenal and hormone problems -- that are outside a chiropractor's scope of practice. Moreover, the letters do not state that Plaintiff requires any type of shoe lift or orthotic for his hip deformity.

Plaintiff's medical records show that Plaintiff did not demonstrate any neurological symptoms, and Plaintiff's blood tests and lab results did not reveal adrenal or hormone issues. Plaintiff's medical records show that Defendants treated Plaintiff's medical issues based on Plaintiff's symptoms and complaints. As such, Defendants' treatment of Plaintiff does not amount to a violation of Plaintiff's constitutional rights. Although Plaintiff's medical treatment was far from optimal, Plaintiff has failed to show that Defendants' actions amount to deliberate indifference.

## CONCLUSION

Because the evidence in the record of this case is insufficient to permit a finding that Defendants were deliberately indifferent to Plaintiff's serious medical needs, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 4th day of February, 2013.

          s/ Charles H. Weigle_____
          Charles H. Weigle
          United States Magistrate Judge